# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GOVERNMENT ACCOUNTABILITY PROJECT, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 19-0449 (RDM) |
| UNITED STATES DEPARTMENT OF STATE, et al. | ) ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CENTRAL INTELLIGENCE AGENCY'S RENEWED MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S <u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... iii

INTRODUCTION .......................................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

ARGUMENT .................................................................................................................................. 3

    I.    DEFENDANT'S MOTION SHOULD BE DISMISSED AS UNTIMELY PURSUANT TO FED. R. CIV. P 6(b)(1)(B) ........................................................................................................ 3

    II.    THE CIA HAS FAILED TO DEMONSTRATE THAT ITS GLOMAR RESPONSE PROPERLY COVERS UNSOLICITED COMMUNICATIONS FROM THIRD PARTIES ............................... 4

    III.    THE CIA HAS FAILED TO DEMONSTRATE HOW A SEARCH FOR UNSOLICITED RESPONSIVE RECORDS WOULD BE IMPRACTICABLE ......................................................... 9

CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Boyd v. Exec. Office for U.S. Attorneys*, 87 F.Supp.3d 58 (D.D.C. 2015) ...................................... 9

*Cause of Action Inst. v. U.S. Dep't of Justice*, 999 F.3d 696 (D.C. Cir. 2021) ............................... 6

*Judicial Watch v. U.S. Dept. of Defense, et al.*, 245 F.Supp.3d 19 (D.D.C. 2017) ........................ 9

*Judicial Watch v. U.S. Secret Service*, 726 F.3d 208 (D.C. Cir. 2013) ........................................... 6

*Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990) ........................................................ 4

*Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885 (D.C. Cir. 1995) .................................. 9, 10

*Pinson v. U.S. Dept. of Justice*, 80 F.Supp.3d 211 (D.D.C. 2015) ........................................... 9, 10

*Safecard Servs., Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991) ....................................................... 9

*Sai v. Transportation Security Administration*, 466 F.Supp.3d 35 (D.D.C. 2020) ........................ 9

*Smith v. District of Columbia*, 430 F.3d 450 (D.C. Cir. 2005) ...................................................... 4

*U.S. Dep't of Justice v. Tax Analysts,* 492 U.S. 136 (1989) ........................................................... 6

**Statutes**

44 U.S.C. § 3301(a) .................................................................................................................... 5, 7

5 U.S.C. § 552(a)(3) ........................................................................................................................ 6

**Rules**

Fed. R. Civ. P. 6(b) ..................................................................................................................... 2, 4

**Regulations**

36 C.F.R. § 1220.18 ........................................................................................................................ 5

## INTRODUCTION

Although this Court afforded the CIA a second opportunity to demonstrate the propriety of its *Glomar* response, the agency still has fallen far short of meeting its evidentiary burden. Relying on vague and broadly worded assertions of harm, the CIA has yet to connect the documents at issue—unsolicited communications from third parties—to any concrete harm the FOIA protects against. Instead, it relies on their purported status as "agency records" under the Federal Records Act ("FRA"), which it claims alone establishes that revealing their mere existence would reveal that the CIA has a "mission-related interest" in matters this Court already has deemed properly classified. This argument, however, misconstrues both the FRA and the meaning of agency record for purposes of the Freedom of Information Act. Moreover, even if the requested documents qualify as "records," the simple fact that they have some connection to the CIA in some unidentified manner fails to establish the requisite link to some facet of the CIA that is properly subject to FOIA Exemption 1.

The CIA also makes the meritless claim that it cannot meaningfully search for unsolicited communications responsive to Plaintiff's request because it does not categorize its documents as either "solicited" or "unsolicited." As support for this novel claim the CIA relies on the bare statement of its declarant Vanna Blaine that she is unable to think of any search terms to locate the requested documents. This too falls far short of the agency's evidentiary burden.

Finally, the CIA's motion should be denied as procedurally flawed. The Court's order granting the CIA the right to file a renewed summary judgment motion specifically directed the agency to work with Plaintiff to jointly propose a schedule on or before August 20, 2021. The CIA ignored this directive and instead, over two and one-half months later and without conferring with the Plaintiff, set forth a proposed briefing schedule in an individual status report

1

the Defendants filed with the Court. The CIA then filed its renewed summary judgment motion without seeking leave of the Court. Under these circumstances and pursuant to Fed. R. Civ. P. 6(b) the Court must deny the CIA's renewed motion for summary judgment as untimely.

## BACKGROUND

In its July 7, 2021 Memorandum Opinion and Order the Court granted the CIA's motion for summary judgment in part as to all aspects of its *Glomar* response with the exception of any "unsolicited communications from third parties that, for whatever reason, are responsive to GAP's FOIA request." Mem. Op. and Order ("Mem Op.") at 26-27 (ECF No. 72). The Court questioned the logic and plausibility of the CIA's position that revealing the existence of such unsolicited communications might imperil national security based on its assertion that "the majority of CIA relationships with outside entities are, in fact, classified" *Id*. The Court found that neither party had "fully developed the issue" and because the CIA ultimately failed to satisfy its burden under 5 U.S.C § 552(a)(4)(B) to offer a reasonable explanation in the form of a declaration or affidavit to support its position that "the identity of virtually any private party that might contact the Agency about a matter of policy is classified," the Court reserved judgment on the issue and provided the parties leave to renew their respective motions for summary judgment at a future time. *Id*. at 27.

To that end, the Court directed the parties to file, on or before August 20, 2021, "a joint status report…proposing a schedule for further proceedings in this matter." *Id*. On November 2, 2021, Defendants filed an individual status report that included a proposed briefing schedule for the CIA's renewed motion for summary judgment. The CIA not only failed to comply with the Court-ordered timeline for submitting a proposed briefing schedule, but it also failed to first confer with Plaintiff about that schedule. Nor did the CIA seek leave of the Court to file its belated proposed schedule.

Despite lacking the Court's endorsement of its proposed schedule, the CIA filed its renewed motion for summary judgment on February 2, 2022.[1] That motion raises two arguments that the CIA asserts support its *Glomar* response: (1) revealing the existence of unsolicited documents the CIA received concerning some aspect of Plaintiff's FOIA request would cause harm to national security because it would necessarily disclose documents relevant to the CIA's motion; and (2) conducting a search for unsolicited records responsive to Plaintiff's request would be impracticable because according to its declarant, "it does not…retain or categorize records according to whether they were derived from solicited or unsolicited information"[2] and its declarant is not currently aware of how the CIA might otherwise conduct such a search.

## ARGUMENT

**I. DEFENDANT'S MOTION SHOULD BE DISMISSED AS UNTIMELY PURSUANT TO FED. R. CIV. P 6(b)(1)(B)**

Although in the opening page of its brief the CIA acknowledges the Court's order directing the parties to file a joint status report "proposing a schedule for further proceedings in this matter," Mem. Op. at 27, it ignores entirely the Court's instruction to file a *joint* status report and accompanying proposed briefing schedule "on or before August 20, 2021." *Id*. (emphasis added). Instead on November 2, 2021—and without conferring with Plaintiff—Defendants included a proposed briefing schedule for the CIA's renewed motion in their individual monthly status report to the Court. ECF No. 76. The CIA did not seek leave of the Court to file the belated proposed briefing schedule, failed to confer with Plaintiff regarding its intent to renew its motion for summary judgment, provided no justification for the post-deadline submission, and

---

[1] Notwithstanding the CIA's failure to comply with this Court's order, Plaintiff filed its own motion on February 8, 2022, asking the Court to approve the CIA's proposed briefing schedule. ECF No. 82. By this motion Plaintiff does not concede the propriety of the CIA's actions, but merely seeks to ensure it has an opportunity to respond to the CIA's motion should the Court entertain it.
[2] *See* Declaration of Vanna Blaine (Dkt. 80-1), at ¶ 9.

ultimately filed its renewed summary judgment motion without seeking leave of the Court to do so. For those reasons alone its renewed summary judgment motion must be denied.

Rule 6(b) of the Federal Rules of Civil Procedure confers on courts the discretion to permit late filings—defined to include those that exceed a date imposed by a court order—upon a showing of good cause or excusable neglect. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 896 (1990). An extension sought after the expiration of the designated time period "must be 'upon motion made,' and is permissible only where the failure to meet the deadline 'was the result of excusable neglect.'" *Id.* (citing Fed. R. Civ. P. 6(b)). Further, in the absence of a motion for an extension a court has "no basis on which to exercise its discretion." *Smith v. District of Columbia*, 430 F.3d 450, 456-57 (D.C. Cir. 2005).

Here the CIA failed to comply with a court-ordered deadline and nevertheless proceeded with an untimely renewed summary judgment motion without first seeking leave of the Court. It neither made a motion for an extension nor offered any justification for its failure to comply with the Court's order. In these circumstances this Court has no basis to exercise its discretion and must deny the CIA's motion on procedural grounds.

## II. THE CIA HAS FAILED TO DEMONSTRATE THAT ITS GLOMAR RESPONSE PROPERLY COVERS UNSOLICITED COMMUNICATIONS FROM THIRD PARTIES

The CIA's renewed motion for summary judgment rests on the remarkable proposition that revealing the mere existence of unsolicited documents the CIA received concerning some unidentified aspect of Plaintiff's FOIA request would cause specific and concrete harm to the national security because it would disclose their "relevance" to the CIA's mission. *See, e.g.*, Mem. of Pts. and Auth. in Support of CIA's Renewed M. for S. Judg. (Dkt. 79) at 2 ("CIA's SJM"). This is so, the CIA argues, because the existence of responsive documents means that the

4

CIA has determined they are "records" within the meaning of the Federal Records Act and therefore both relevant to and revealing of the agency's mission. This argument misconstrues both the FRA and its interplay with the FOIA. Moreover, the CIA's argument sweeps so broadly that, if accepted, it would render the entirety of the agency's documents exempt from disclosure under the FOIA. Nothing in either the FOIA or the FRA sanctions this result.

The FRA defines "record" broadly to include:

> all recorded information, regardless of form or characteristics, made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them[.]

44 U.S.C. § 3301(a). Under this definition, records that the agency made or received meet the first requirement of the FRA's definition of a "record." But only those that evidence some aspect of the agency's "organization, functions, policies, decisions, procedures, operations, or other activities" qualify for preservation. Accordingly, an agency may possess records that it made or received but that ultimately are not appropriate for preservation.

Regulations issued by the National Archives and Records Administration ("NARA") confirm that agencies possess two types of records: those with permanent value that must be permanently preserved as "permanent records," and those having only transitory value that do not warrant preservation by NARA as "temporary records." *See* 36 C.F.R. § 1220.18. NARA has estimated that "'less than 5 percent of the mountain of documents created by agencies every year comes to the Archives,' with the remainder being considered temporary records." U.S. Congressional Research Service, Federal Records: Types and Treatments, 7-5700, Feb. 26, 2019, https://crsreports.congress.gov/product/pdf/IF/IF11119. In other words, most agency records

have—at best—only "transitory value" and do not merit long-term preservation as "records" under the FRA.

    The FOIA also uses the term "record" in its requirement that federal agencies provide requesters with all non-exempt "agency records." 5 U.S.C. § 552(a)(3). While the statute provides "little precise guidance on what constitutes a record," *Cause of Action Inst. v. U.S. Dep't of Justice*, 999 F.3d 696, 699 (D.C. Cir. 2021), courts have construed this requirement to encompass "those documents that an agency both (1) 'create[s] or obtain[s],' *and* (2) control[s] at the time the FOIA request [was] made." *Judicial Watch v. U.S. Secret Service*, 726 F.3d 208, 216 (D.C. Cir. 2013) (citation omitted). Unlike the FRA, however, the FOIA's use of the word "record" is divorced from any requirement that the document in question reflect something about the agency's "organization, functions, policies, decisions, procedures, operations, or other activities." Instead, a document is subject to the FOIA merely if it is in the agency's possession and control at the time of the request. Accordingly, for example, in *U.S. Dep't of Justice v. Tax Analysts* the Supreme Court concluded that copies of opinions issued by courts in civil tax cases that staff attorneys in the Department of Justice's Tax Division had obtained qualified as "records" subject to the FOIA because the agency had both possession and control over them. 492 U.S. 136, 147-48 (1989). Whether or not those records revealed anything about the agency and would qualify for preservation by NARA had no bearing on their status as agency records for purposes of the FOIA.

    Here, this statutory and regulatory authority means that all responsive documents in the CIA's possession and control at the time of Plaintiff's FOIA request fall within the scope of Plaintiff's FOIA request regardless of whether they would qualify as "records" within the meaning of the FRA as revealing something about the agency's mission or organizational focus.

The CIA's mere possession of and control over the documents render them subject to the FOIA without any assessment by the CIA as to their relevance to the agency's mission or their propriety for long-term preservation. Stated differently, the mere happenstance that the CIA had within its files certain documents responsive to Plaintiff's FOIA request standing alone makes those documents subject to the FOIA even if the CIA were to eventually conclude that they—like most of the agency's records—are temporary at best.

The CIA's summary judgment motion rests on the proposition that any existing responsive records the agency has in its possession necessarily would have been evaluated for their relevance to the agency's mission under the FRA. *See* CIA's SJM at 2. To the contrary, as explained, an agency performs that evaluation when ascertaining whether a particular document is worthy of preservation. The CIA has provided no evidence that the documents here underwent such an evaluation, resting instead on the unproven assertion that the agency's mere possession of the responsive documents means the agency made the affirmative decision to retain them as "records" because they reflect something about the agency's mission. *See* Declaration of Vanna Blaine (Dkt. 80-1), ¶ 7.

Moreover, even if the CIA had determined that unsolicited documents submitted by third parties that fall within Plaintiff's FOIA request qualify as "records" under the FRA, that would mean only that they evidence some aspect of "the organization, functions, policies, decisions, procedures, operations, or other activities" of the agency. 44 U.S.C. § 3301(a). A document's connection in some way to some aspect of an agency, however, reveals nothing about its substance and certainly falls far short of revealing information that is "currently and properly classified in the interest of the national security." CIA's SJM at 2.

Nor has the CIA provided the kind of evidence that would allow this Court to draw a connection between disclosing the withheld documents and a cognizable harm to national security. For example, the CIA has not explained—as it did in its first summary judgment motion—how merely acknowledging the existence of unsolicited responsive documents "would provide U.S. adversaries 'insight into the scope and nature of CIA's intelligence activities and interests." Mem. and Op. at 17 (July 7, 2021) (Dkt. 72). Instead, it suggests that its treatment of the documents as "records" (something it has yet to prove) in and of itself provides the necessary link to an interest that, if revealed, would compromise national security.

This assertion falls far short of the evidentiary burden the CIA bears to demonstrate that the unsolicited responsive records "pertain[] to a type of information enumerated in Executive Order 13526" and their disclosure "could reasonably be expected to cause identifiable or describable damage to the national security." Executive Order 13526 § 1.4. The CIA still has not offered "a reasoned explanation in a declaration or affidavit that supports its position" and that is both "logic[al]" and "plausib[le]." Mem. and Op. at 26. Moreover, the CIA's argument sweeps so broadly that, if accepted, would render the entirety of the agency's documents exempt from disclosure under the FOIA simply because they have some connection—no matter how remote or undefined—to some aspect of the CIA. Nothing in either the FRA or the FOIA supports such an absurd result.

In sum, the CIA has not met its burden of demonstrating the propriety of its *Glomar* response with respect to unsolicited communications from third parties that are responsive to some unidentified aspect of Plaintiff's FOIA request. Accordingly, its summary judgment motion must be denied.

### III. THE CIA HAS FAILED TO DEMONSTRATE HOW A SEARCH FOR UNSOLICITED RESPONSIVE RECORDS WOULD BE IMPRACTICABLE

The CIA's renewed summary judgment motion also rests on the claim that searching for unsolicited responsive records would be "impracticable" because the agency "does not…retain or categorize records according to whether they were derived from solicited or unsolicited information[."] Declaration of Vanna Blaine (Dkt. 80-1), ¶ 9.Further, the CIA's declarant claims to be "unaware of any search terms or restrictions" that would allow the CIA to locate the requested records. *Id.* Neither excuse comes close to carrying the agency's burden of demonstrating why such a search would be "unreasonably burdensome." *See Pinson v. U.S. Dept. of Justice*, 80 F.Supp.3d 211, 216 (D.D.C. 2015) (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995)).

"Upon receiving a FOIA request, an agency must initially conduct an adequate search for responsive documents." *Judicial Watch v. U.S. Dept. of Defense, et al.*, 245 F.Supp.3d 19, n.3 (D.D.C. 2017). An agency can satisfy this requirement by "demonstrat[ing] beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Id*. (quoting *Boyd v. Exec. Office for U.S. Attorneys*, 87 F.Supp.3d 58, 70 (D.D.C. 2015) (citing cases). This can be accomplished through an agency's offer of "'relatively detailed and non-conclusory' affidavits or declarations establishing that its searches were adequate." *Sai v. Transportation Security Administration*, 466 F.Supp.3d 35, 43 (D.D.C. 2020) (citing *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) Initial agency searches often sweep broadly and can encompass what turn out to be non-responsive materials; however, this does not excuse an agency's decision not to conduct a search in the first place as the CIA appears to suggest in its motion.

9

Here, the CIA has not met its burden of demonstrating it conducted an adequate search. The lack of "awareness" by the CIA's declarant of possible search terms does not substitute for the detailed showing the agency must make that explains why there are no potential search terms it could use to locate responsive documents, all potential avenues it considered, and that justifies its ultimate conclusion that any search would be impracticable. Indeed, the declarant's unsupported conclusion borders on the nonsensical and fails to address obvious questions. Why, for instance, could the CIA not conduct a search using the filters of all communications sent by identified individuals or non-governmental email accounts pertaining to specified search terms drawn from Plaintiff's FOIA request? Although a search with these parameters might sweep in both solicited and unsolicited communications, the agency could then eliminate those documents that are non-responsive—a processing step that agencies perform every day under the FOIA.

Because the CIA has not sufficiently detailed why it cannot practically screen for unsolicited communications or outlined any additional steps it took to come to that conclusion, its summary judgment motion should be denied. *Pinson*, at n.5; *see also Nation Magazine*, 71 F.3d at 892.

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendant CIA's renewed motion for summary judgment as untimely. If the Court accepts Defendant's motion it should be denied based on Plaintiff's arguments as set forth herein and Plaintiff's renewed motion for summary judgment should be granted. Further, the CIA should be directed to process GAP's request for responsive unsolicited records as soon as possible and provide GAP with a determination within 30 days of the Court's decision on this matter.

Dated: March 2, 2022                                    Respectfully submitted,

                                                                                        */s/  Anne L. Weismann*
Anne L. Weismann
D.C. Bar No. 298190
5335 Wisconsin Avenue, N.W., Suite 640
Washington, D.C. 20015
Phone: (301) 717-6610
weismann.anne@gmail.com

*Counsel for Plaintiff*