# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GOVERNMENT ACCOUNTABILITY PROJECT, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )  Civil Action No. 19-0449 (RDM) |
| UNITED STATES DEPARTMENT OF STATE, et al. | ) ) ) ) |
| Defendants. | ) ) ) |

**PLAINTIFF GOVERNMENT ACCOUNTABILITY PROJECT'S REPLY IN FURTHER SUPPORT OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................**Error! Bookmark not defined.**

ARGUMENT ............................................................................................................................... 1

    I.    DEFENDANT'S ASSERTION THAT IT CAN DISREGARD A DIRECT ORDER OF THE COURT IS INCORRECT. ...................................................................................... 1

    II.    THE CIA HAS STILL FAILED TO MEET ITS BURDEN OF SHOWING THAT ALL UNSOLICITED COMMUNICATIONS FROM THIRD PARTIES FALL WITHIN THE SCOPE OF EXEMPTION ONE AND ARE THEREFORE SUBJECT TO A *GLOMAR* RESPONSE. ................................................................................................................. 2

    III.    THE CIA HAS NOT ADEQUATELY ADDRESSED WHY THE SEARCH TERMS SUGGESTED BY PLAINTIFF WOULD BE IMPRACTICABLE ................................. 5

CONCLUSION............................................................................................................................ 7

# TABLE OF AUTHORITIES

### Cases

*Forsham v. Harris*, 445 U.S. 169 (1980) .................................................................................... 4

*Founding Church of Scientology v. NSA*, 610 F.2d 824 (D.C. Cir. 1979) ................................. 5, 6

*Goland v. CIA*, 607 F.2d 339 (D.C. Cir. 1978) ........................................................................... 5, 7

*Government Accountability Project v. CIA*, 548 F. Supp. 3d 140 (D.D.C. 2021) ....................... 3

*Lockett v. Wray*, 271 F. Supp. 3d 205 (D.D.C. 2017) ................................................................. 7

*Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990) ...................................................... 2

*Moore v. Nat'l DNA Index System*, 662 F. Supp. 2d 136 (D.D.C. 2009) .................................... 7

*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) ........................................................................ 5, 6

*Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885 (D.C. Cir. 1995) ....................................... 7

*Pinson v. U.S. Dept. of Justice,* 80 F.Supp.3d 211 (D.D.C. 2015) ................................................ 7

*Smith v. District of Columbia*, 430 F.3d 450 (D.C. Cir. 2005) .................................................... 2

### Statutes

44 U.S.C. § 3301(a) ....................................................................................................................... 4

**ARGUMENT**

I. **DEFENDANT'S ASSERTION THAT IT CAN DISREGARD A DIRECT ORDER OF THE COURT IS INCORRECT.**

The CIA's arguments against the untimeliness of its renewed motion for summary judgment present more questions than answers. In attempting to assign blame to anyone other than itself, the CIA confoundingly suggests that it is the Court that is at fault for not exercising its "broad discretion" to establish a briefing schedule, yet at the same time acknowledges and apologizes for "any inconvenience" resulting from the agency's failure to adhere to the Court's explicit directive to file a proposed briefing schedule on or before August 20, 2021. *See* CIA's Reply in Support of Renewed Mot. for Summ. J. filed April 5, 2022 (ECF No. 86 at 1-2) ("CIA Reply"). Even more strange is the CIA's assertion that pursuant to Federal Rule of Civil Procedure 56(b), it was free to file its renewed motion for summary judgment "at any time until 30 days after the close of all discovery" because "no deadline for such motions existed." *Id*. at 2.

As an initial matter, the Court has never granted a period of discovery in this matter. This fact alone renders the Defendant's statement that it had until 30 days after the close of discovery to file its motion nonsensical. If the CIA genuinely believed it was under no obligation to propose a briefing schedule in advance of filing its renewed motion for summary judgment, then its belated scheduling proposal in a monthly status report on November 2, 2021, nearly 11 weeks after the Court-ordered deadline, makes no sense. *See* ECF No. 76. The CIA's attempt to cover up its noncompliance in this manner is likely why the Court – and Plaintiff, with whom Defendant did not previously confer about the proposed dates[1] – did not take notice of its

---

[1] Plaintiff notes that it was content to leave its original motion for summary judgment as-is following the Court's July 7, 2020 Memorandum Opinion and Order and had no further intention to renew its motion until the CIA belatedly filed its renewed motion for summary judgment on February 2, 2022. Realizing that the CIA had not first sought leave of the Court *Plaintiff* sought endorsement from the Court of the CIA*'s* proposed briefing schedule so that, if the Court

1

proposal and further explains why the schedule was not endorsed until February 9, 2022, when *Plaintiff* acted to that end. *See* ECF No. 82.

The CIA cannot have it both ways by arguing that there was no briefing order in effect at the time it filed its renewed motion for summary judgment when its own actions stand as the root cause for the lack of a Court-imposed deadline. The CIA's failure to abide by the Court's July 7, 2021 Order necessitating the submission of a proposed schedule by a date certain required that, pursuant to Federal Rule of Civil Procedure 6(b), the CIA seek the Court's leave for an extension of time to comply upon proof of good cause or excusable neglect. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 896 (1990). The agency's failure to do so left this Court with "no basis on which to exercise its discretion," *Smith v. District of Columbia*, 430 F.3d 450, 456-57 (D.C. Cir. 2005), therefore the Court must deny the motion on these procedural grounds.

**II.     THE CIA HAS STILL FAILED TO MEET ITS BURDEN OF SHOWING THAT ALL UNSOLICITED COMMUNICATIONS FROM THIRD PARTIES FALL WITHIN THE SCOPE OF EXEMPTION ONE AND ARE THEREFORE SUBJECT TO A *GLOMAR* RESPONSE.**

The CIA's *Glomar* response rests exclusively on its ipse dixit proposition that *all* records potentially responsive to Plaintiff's FOIA request are "currently and properly classified under Executive Order 13526 and exempt from disclosure," citing as support this Court's Memorandum Opinion. CIA's Reply at 4. That opinion, however, actually undermines, not support's the CIA's arguments; the Court concluded that the CIA's broad assertion of a *Glomar* response to cover unsolicited communications from third parties was both "unsupported by any citation to the record" and unsupported by the factual record here. *Government Accountability*

---

accepted the CIA's motion Plaintiff would have an opportunity to respond. *See* ECF No. 82. As such, Plaintiff disagrees with the CIAs contention that the Court's directive to file a proposed briefing schedule on or before August 20, 2021 was an equally shared responsibility or that Plaintiff failed in any way to prosecute its own case.

*Project v. CIA*, 548 F. Supp. 3d 140, 158 (D.D.C. 2021). ("Mem. Op."). For example, as the Court explained, "the Director's purely passive receipt" of a briefing paper sent to "dozens of other executive branch officials" would, "in all likelihood, say nothing about the CIA's interests or activities[.]" *Id.* The Court therefore left it to the CIA to explain with more particularity why unsolicited third-party communications would be properly classified. Not only has the CIA failed to meet that evidentiary burden, but it instead takes the blanket position "that there is no reason" why the Court's holding as to the other categories of records at issue should not be applied here. *See* CIA Reply at 8. That is an argument the CIA already has lost.

At bottom the CIA's renewed summary judgment motion still lacks any record support for its counter-intuitive assertion that all unsolicited third-party communications are properly subject to a *Glomar* response. Its latest supporting declaration merely states the demonstrably false proposition that the CIA's possession of information by itself necessarily means the information is relevant to the CIA's mission and therefore properly classified. *See* Declaration of Vanna Blaine (ECF No. 80-1) ¶ 6 ("Blaine Decl."); CIA Reply at 5. As Plaintiff explained in its opposition and cross-motion, however, the CIA's mere possession of and control over responsive documents render them subject to the FOIA without any independent assessment by the CIA as to their relevance to the agency's mission. The CIA's arguments to the contrary reflect a fundamental misunderstanding about the intersection between the FOIA and the Federal Records Act ("FRA") and the agency's obligations under both statutes.

For purposes of the FOIA an agency record subject to the statute's requirements is one that is created or obtained by the agency and subject to its control. *See, e.g., U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144-45 (1989). Nothing in the FOIA requires the agency to make the separate and independent assessment that the record is "relevant" to the agency's mission. By

3

contrast, the FRA defines a "record" worthy of preservation as one that is made or received by the agency *and* appropriate for preservation. 44 U.S.C. § 3301(a).[2] Moreover, while it is correct—as the CIA points out—that an agency need not retain non-records under the FRA, CIA Reply at 6, there also is nothing that prohibits an agency from retaining such records for some period of time. In this case, the CIA has offered no evidence that the agency has reviewed any of the records potentially responsive to the request for unsolicited third-party communications to determine whether they are worthy of preservation.

Moreover, even if "relevant" in some way to the mission of the CIA, unsolicited third-party communications are not necessarily classified and subject to withholding under FOIA Exemption 1. The CIA tries to shoehorn such documents into the category of "potential collection of intelligence," CIA Reply at 5, but there is no evidentiary support for that categorization. As this Court already has recognized, they may just as easily include a briefing paper sent to "dozens of other executive branch officials." Mem. Op., 548 F. Supp. 3d at 158. Without more, there is no basis to conclude that disclosing such a document would cause a cognizable harm to national security.

Curiously the CIA also argues that whether the documents in question qualify as an "agency record" under the FOIA "is irrelevant." CIA Reply at 7. Yet is it the CIA in its opening brief that first invoked the FRA and that statute's supposed significance for viewing the

---

[2] In arguing to the contrary the CIA cites to the Supreme Court's decision in *Forsham v. Harris*, 445 U.S. 169, 183 & n. 14 (1980). CIA Reply at 6. There the Court observed the distinction between a "record" under the FRA, which is one not only in the agency's possession but also either preserved or appropriate for preservation, and a non-record under that statute, which does not meet the preservation requirement. As the Court also noted, the FOIA's definition of agency records does not include the preservation requirement. But the expressly Court declined to reach the question of whether the FOIA extends to "nonrecords." *Id.*

requested records as "relevant" to the CIA's "mission." CIA's SJM at 2. Having framed its arguments around the flawed concept that the records are exempt under the FOIA because they meet the FRA's definition of agency record, the CIA must live with the consequences of its choices.

Essentially the CIA seeks a categorical exemption from the FOIA's disclosure obligations for the entirety of its records. Yet a quick search of its own website, www.CIA.gov, reveals that the agency voluntarily makes public documents that include a wealth of information about the agency. Indeed, the website claims under the category "Resources" that it "release[s] millions of pages of documents to the public each year," ranging from "declassified publications and reports to basic references, intelligence studies, and world maps." www.CIA.gov/resources/. The website also contains an electronic reading room where the documents it has released under the FOIA may be found. www.CIA.gov/readingroom/. All of this undermines—if not disproves—the CIA's claim here that a *Glomar* response is proper because all relevant CIA documents necessarily would be properly classified and subject to withholding under the FOIA.

### III.  THE CIA HAS NOT ADEQUATELY ADDRESSED WHY THE SEARCH TERMS SUGGESTED BY PLAINTIFF WOULD BE IMPRACTICABLE

When assessing the adequacy of an agency's "identification and retrieval efforts," the Court may rely upon agency affidavits. *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007) (quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836 (D.C. Cir. 1979)). However, the Court's reliance is appropriate only when the agency's supporting affidavit is "'relatively detailed' and nonconclusory." *Id*. (citing *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation omitted)). Where the agency's identification and retrieval process is genuinely in dispute, summary judgment is not appropriate. *Id*.; *see Founding Church of Scientology*, 610 F.2d at 836.

Here, simply put, the CIA has not demonstrated how its declarant's statement that the CIA does not categorize records based on their nature as solicited or unsolicited, Blaine Decl. ¶ 9, supports the agency's conclusion that there are zero search terms or potential avenues it could utilize to conduct a search. *See* CIA Reply at 9. The purely conclusory statements espoused by the declarant lack any factual support and therefore deprive Plaintiff of any opportunity to meaningfully challenge the adequacy of the agency's search. They also provide the Court with no assistance in assessing whether the CIA conducted an adequate search sufficient to grant it summary judgment. *See Morley*, 508 F.3d at 1121 (agency declaration insufficient to establish it conducted an adequate search where it "provide[d] little more than conclusory adjectives and does not provide sufficient detail for the court itself to determine the search's adequacy"). The declarant's stated lack of "awareness" about any search terms the CIA could use, Blaine Decl. at ¶ 9. simply speaks to the declarant's inability to craft an effective search. Standing alone, however, it fails to satisfy the reasonableness test set forth under the FOIA.

In its reply, the CIA concedes it "might be able to search" for "all communications sent by identified individuals or non-governmental email accounts pertaining to specified search terms drawn from Plaintiff's FOIA request," but challenges the reasonableness of such a search as overbroad because it would sweep in solicited communications. CIA Reply at 9-10. According to the CIA it could not "meaningful[l]y . . . differentiate between the two [solicited and unsolicited]." *Id.* at 10. But a simple examination of an email would reveal whether it was sent in response to a communication from the CIA. The mere fact that the CIA would have to conduct a two-part process to weed out non-responsive documents, standing alone, fails to demonstrate why such a review would be impracticable to warrant a grant of summary judgment in its favor. *See e.g., Pinson v. U.S. Dept. of Justice,* 80 F.Supp.3d 211, 216 (D.D.C. 2015);

6

*Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995). Indeed, agencies commonly cast a wide net when searching for responsive documents and must engage in further document-by-document review to determine whether each document in fact is what the requester seeks. Plaintiff is aware of no court to hold that this two-step process imposes an unreasonable burden on an agency, and the CIA cites to no such case.[3] Moreover, while the CIA resists conducting a page-by-page review to determine whether specific communications were unsolicited, it has not demonstrated that the volume of potentially responsive documents is so large as to render their review unreasonable or unduly burdensome. *Compare Goland*, 607 F.2d at 353-54 (concluding that a page-by-page review of 84,000 cubic feet of records in response to plaintiff's request for documents that may have been the basis for congressional testimony would be unreasonable for the CIA to carry out given the volume of responsive records).

## CONCLUSION

For the foregoing reasons and those previously set forth, the Plaintiff Government Accountability's Cross-Motion for Summary Judgment should be granted, and Defendant Central Intelligence Agency's Renewed Motion for Summary Judgment should be denied.

Dated: April 12, 2022 　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　*/s/ Anne L. Weismann*
　　　　　　　　　　　　　　　　　　　　　　Anne L. Weismann
　　　　　　　　　　　　　　　　　　　　　　D.C. Bar No. 298190
　　　　　　　　　　　　　　　　　　　　　　5335 Wisconsin Avenue, N.W., Suite 640
　　　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20015

---

[3] The two cases the CIA cites, Reply at 10, are not to the contrary. In both the agency as a factual matter had no ability to search for the requested records. In *Lockett v. Wray*, 271 F. Supp. 3d 205, 209-10 (D.D.C. 2017), the database on which the records were stored was designed in a way that denied the FBI access to the records in question. Likewise in *Moore v. Nat'l DNA Index System*, 662 F. Supp. 2d 136, 139 (D.D.C. 2009), the FBI was unable to identify DNA records for state convicts. In the instant case, by contrast, the CIA has full access to and control over all responsive records.

                                                Phone: (301) 717-6610
                                                weismann.anne@gmail.com

                                                *Counsel for Plaintiff*